# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# WEST PALM BEACH DIVISION

| | |
|---|---|
| CIERRA MARTE, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TANDYM GROUP, LLC,<br><br>　　　　Defendant. | **JURY DEMAND**<br><br>Case No. |

## NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendant Tandym Group, LLC ("Tandym Group" or "Defendant") hereby removes this action from the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, to the U.S. District Court for the Southern District of Florida. Removal is proper because this Court has jurisdiction under (i) the Class Action Fairness Act of 2005; and (ii) 28 U.S.C. § 1332(a). In support of removal, Tandym Group states as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over this civil action under 28 U.S.C. §§ 1332(d)(2), 1441, and 1453. This action is therefore removable: (i) pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453(b), because this is a class action in which the size of the proposed class exceeds one hundred members, there is diversity of citizenship between at least one member of the putative class of plaintiffs and one defendant, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (ii) pursuant to 28 U.S.C. § 1332(a), because complete diversity exists between the parties and the amount in controversy for Plaintiff's claims exceeds $75,000.

2. Removal to this Court is proper because the U.S. District Court for the Southern District of Florida embraces the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, where Plaintiff Cierra Marte ("Plaintiff") filed this action. *See* 28 U.S.C. §§ 89 (c) ("The Southern District [of Florida] comprises the counties of Broward, Dade, Highlands, Indian River, Martin, Monroe, Okeechobee, Palm Beach, and St. Lucie"); 1441(a).

## STATE COURT ACTION

3. On April 18, 2024, Plaintiff filed a Class Action Complaint in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, Case No. 50-2024-CA-003622-XXXA-MB, asserting claims for negligence and breach of fiduciary duty stemming from an alleged data breach. (*See* **Exhibit A**, Class Action Compl., attached hereto.)

4. Plaintiff brings this action for "an award of damages, including actual, consequential, and nominal damages, as allowed by law in amount to be determined" and other relief as a result of Tandym Group's alleged negligence and breaches of fiduciary duty, for:

> (1) failing to "encrypt the [personal identifiable information] of Plaintiff and Class Members" and allowing "the threat of [an] attacker to acquire their [personal identifiable information]"; (2) failing "to remove from its network the [personal identifiable information] of Plaintiff and Class members that Defendant had no reasonable need to store in an internet-accessible environment, including the [personal identifiable information] of Plaintiff and Class Member with whom Defendant had not had a relationship [with] for years" and allowing "the threat attacker to acquire their [personal identifiable information]"; and (3) failing "to monitor in real time the movement of the [personal identifiable information] of Plaintiff and Class Members from Defendant's network to the internet [that] allowed the threat attacker to exfiltrate the [personal identifiable information] without detection and therefore without any attempt to halt the exfiltration before its completion."

(*Id.* ¶ 96(a)-(c).)

5. Plaintiff requests, on behalf of himself and a putative class, an order: (1) certifying the above-captioned case as a class action; (2) the entry of a sixteen-part injunction related to the

data-breach; (3) awarding "damages, including actual, consequential, and nominal damages as allowed by law in an amount to be determined" (4) awarding "attorneys' fees, costs, and litigation expenses"; and (5) awarding prejudgment interest. (*Id.* at 26-28.)

6. On April 25, 2024, Plaintiff served Tandym Group with copies of the Complaint and Summons in the state court action. (*See generally id.*)

7. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders that have been filed and served on Tandym Group in the state court action are attached hereto as Exhibit A. (*See generally id.*)

8. No further proceedings have occurred in the state court action. (*See* **Exhibit B**, Docket for Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, Case No. 50-2024-CA-003622-XXXA-MB (May 14, 2024), and all entries, attached hereto.)

## TIMELINESS

9. Removal is timely because Tandym Group filed this Notice within thirty days of service of the Complaint, which occurred on April 25, 2024. *See* 28 U.S.C. § 1446(b)(1); (*See also* **Exhibit C**, Tandym Group Declaration, ¶¶ 4-5.)

## GROUNDS FOR REMOVAL: CLASS ACTION FAIRNESS ACT

10. This Court has original jurisdiction under CAFA because: (1) the putative class includes more than one hundred members; (2) there is minimal diversity of citizenship; and (3) the amount in controversy exceeds $5,000,000.

## CLASS SIZE

11. The class Plaintiff seeks to represent includes more than one hundred members. The proposed class includes "[a]ll persons whose [personal identifiable information] was accessed and/or exfiltrated during the Data Breach Incident." (Ex. A, Compl. ¶ 79.)

12. Plaintiff alleges that "[t]he Data Breach Incident has impacted <u>several thousand</u> persons. The members of the Class, therefore, are so numerous that joinder of all members is impracticable." (*Id.* ¶ 81 (emphasis added).) Solely for purposes of removal, and without conceding that Plaintiff or the class are entitled to any relief, Tandym Group accepts Plaintiff's allegation that the proposed class includes "at least one hundred members." *See, e.g., McGee v. Sentinel Offender Services, LLC*, 719 F. 3d 1236, 1241 (11th Cir. 2013) (courts begin by "look[ing] to the complaint" to establish whether removal is appropriate under CAFA).

13. Moreover, while the precise number of individuals in the purported class is not yet determined, Tandym Group currently believes that approximately 13,817 individuals were affected by the data breach. (Exhibit C, Tandym Group Decl., ¶ 7.) Therefore, although the precise number of individuals in the class cannot be determined until discovery, the aggregate putative class size according to Plaintiff's allegations is, at minimum, "several thousand persons." (Ex. A ¶ 81.)

### MINIMAL DIVERSITY OF CITIZENSHIP

14. There is minimal diversity of citizenship among the parties. Minimal diversity exists when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

15. For purposes of determining diversity, an individual is a "citizen" of the state in which he is domiciled. *See, e.g., Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F. 3d 1330, 1346-47 (11th Cir. 2011).

16. Plaintiff, as described in the Complaint, has been "a citizen and resident of Palm Beach County, Florida." (Ex. A, Compl. ¶ 14.)

17. Tandym Group, LLC is a limited liability company. (Ex. C ¶ 8.) Accordingly, Tandym Group as "a limited liability company" is "a citizen of any state of which a member of the company is a citizen." *See e.g., Rolling Greens MHP, L.P. v. Comcast SCH Holdings LLC*, 374 F. 3d 1020, 1022 (11th Cir. 2004).

18. Here, Tandym Group, LLC is owned by its sole member of Tandym Group Holdings, LLC. (Ex. C ¶ 8.) Tandym Group Holdings, LLC is owned by its sole member of Tripod Intermediate, LLC. (*Id.*) Tripod Intermediate, LLC is owned by its sole member of Tripod TopCo, Inc. (*Id.*) Tripod TopCo, Inc. is incorporated in Delaware and its principal place of business is in New York. (*Id.*); *DO Restaurants, Inc. v. Aspen Specialty Ins. Co.*, 984 F. Supp. 2d 1342, 1345 (S.D. Fla. 2013) ("a corporation is considered a citizen of its state of incorporation and of the state where it has its principal place of business"). Tandym Group, LLC is, therefore, a citizen of the state of Delaware and New York.

19. Accordingly, minimal diversity exists between Plaintiff (*i.e.*, a citizen of Florida) and Tandym Group (*i.e.*, a citizen of Delaware and New York). *See* 28 U.S.C. § 1332(d)(2)(A).

**AMOUNT IN CONTROVERSY**

20. The amount in controversy under CAFA is satisfied if "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). For purposes of determining the amount in controversy, "the claims of the individual class members shall be aggregated." (*Id.*)

21. To demonstrate that the amount-in-controversy requirement is met, Tandym Group need only establish "how much is in controversy at the time of removal, not later." *Pretka v. Kolter City Plaza II, Inc.*, 608 F. 3d 744, 751 (11th Cir. 2010). Indeed, a good-faith estimate is acceptable under CAFA if it is plausible and adequately supported by the evidence. *See Dart Cherokee Basin*

*Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) (defendant's good-faith estimate of amount in controversy is sufficient for removal purposes).

22. Moreover, where a removing party seeks to remove based on the amount in controversy contained in the complaint, the plain language of the complaint is all that need be considered. *See e.g., Lowery v. Alabama Power Co.*, 483 F. 3d 1184, 1208-09 (11th Cir. 2007). If a removing party, however, seeks to remove in the context "where damages are unspecified," then it must prove jurisdiction exists by "a preponderance of the evidence." *Id.* Although Tandym Group denies the merits of Plaintiff's claims, and denies that Plaintiff or the putative class are entitled to any monetary or other relief, solely for purposes of CAFA jurisdiction, however, Defendant admits that the amount in controversy exceeds $5,000,000.

23. Here, among other theories of recovery, Plaintiffs seek to recover for "damages to and diminution in value of their personal data." (*See, e.g.,* Ex. A, Compl., ¶ 11(g).) Under a diminution in value theory, Plaintiffs seek "to recover the difference between the value of what they actually received and the value" that an item was, in fact, worth. *See, e.g., Aurigemma v. Arco Petroleum Products Co.*, 735 F. Supp. 1025, 1033-34 (D. Conn. 1990). Plaintiff alleges that "personal information is sold at prices ranging from $40 to $200" on the dark web. (Ex. A, Compl. ¶ 48.) She similarly alleges that "bank details have a price range of $50 to $200" if sold on the dark web. (*Id.*) Plaintiff alleges both categories of information at issue. (*See e.g., id.* ¶ 1 (alleging claims failure for secure "personally identifiable information"); ¶ 75 (alleging claims related to "bank accounts, payment card statements, and credit reports.") Plaintiff, therefore, alleges that her personal information and bank details may be worth up to $400 for her alone and she received none of the value. (*See id.*)

24. The current amount of individuals estimated to be affected by the data breach is 13,817 people. (Ex. C ¶ 7.) If each individual's personal information and bank details were worth $400 together, then the total amount in controversy — for this allegation alone —for the entire class is $5,526,800.00. Therefore, Plaintiff's allegations on the face of the Complaint exceed the jurisdictional threshold for CAFA, before the court even considers the numerous additional theories of recovery that Plaintiff asserts.

25. Additionally, data breach class actions, similar to this one, routinely exceed awards in excess of $5,000,000. For example, in another data breach "14,503-person class action," the final approved settlement totaled $9,500,000.00. *See, e.g., Pratt v. KSE Sportsman*, No. 1:21-CV-11404, 2023 WL 5500832, at *7 (E.D. Mich. Aug. 25, 2023). In another case where there were allegations that personal identifiable information, and other financial information, were "posted on the 'dark web'" the court found that approved "a settlement totaling up to $28.5 million" based on the understanding that this is a "still developing, novel area of the law." *In Re Wawa, Inc. Data Security Litigation*, No. 19-CV-6019, 2023 WL 6690705, at *8-10 (E.D. Penn. Oct. 12, 2023); (Ex. A, Compl., ¶ 27 ("Plaintiff's . . . information may end up for sale on the dark web.").

26. Accordingly, given this "developing, novel area of the law" and that classes of similar sizes, with similar allegations, have settled for far more than the $5,000,000 CAFA threshold, Tandym Group's good faith estimate is that the amount in controversy exceeds $5,000,000 at this time. (*See* Ex. C ¶ 10.)

**GROUNDS FOR REMOVAL: DIVERSITY JURISDICTION**

27. Even if the Court finds it does not have jurisdiction under CAFA, it also has subject matter jurisdiction under 28 U.S.C. § 1332(a) because complete diversity exists between the parties and the amount in controversy for Plaintiff's individual claims exceeds $75,000.

**COMPLETE DIVERSITY OF CITIZENSHIP**

28. Complete diversity (*i.e.*, where no plaintiff is a citizen of the same state as any defendant) exists where an action is between "citizens of different States." 28 U.S.C. § 1332(a).

29. As stated, Plaintiff is a citizen of Florida, and Tandym Group is a citizen of Delaware and New York. (*See supra*, CAFA Analysis.) Accordingly, complete diversity exists.

**AMOUNT IN CONTROVERSY**

30. Based on the Complaint's allegations, the amount in controversy exceeds $75,000. When analyzing the amount in controversy for a class action under 28 U.S.C. § 1332(a), a court cannot aggregate the putative class members' claims under the methods available under CAFA, rather "two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." *Snyder v. Harris*, 394 U.S. 332, 335 (1969).

31. Although unclear from the face of the Complaint whether Plaintiff refers solely to herself or the purported class as a whole, Plaintiff alleges that the amount "in controversy exceeds the sum or value of $30,000" which is the jurisdictional threshold of the Circuit Court. (Ex. A, Compl., ¶ 22.) However, given that Plaintiff seeks to recover an "award of damages, including actual, consequential, and nominal damages" for herself, it is reasonable to believe Plaintiff alleges that her own claims exceed $30,000.00. (*See id.*)

32. Plaintiff states she is seeking recovery based on the "lifelong ramifications of having [her] highly confidential [personal identifiable information] accessed, acquired, exfiltrated, and/or published on the internet." (*Id.* ¶ 62.) As such, in addition to damages, Plaintiff seeks an injunction:

> (1) requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

(2)  requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

(3)  requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the personal identifying information of Plaintiff and Class Member's personal identifying information;

(4)  prohibiting Defendant from maintaining Plaintiff's and Class Members' personal identifying information on a cloud-based database;

(5)  requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

(6)  requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

(7) requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

(8) requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

(9) requiring Defendant to conduct regular database scanning and securing checks;

(10) requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiffs and Class Members;

(11) requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

(12)  requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

(13) requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

(14) requiring Defendant to meaningfully educate all Class members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

(15) requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and

(16) for a period of 10 years, appointing a qualified and independent third party assessor to conduct attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment.

(*Id.* at 26-28.) If Plaintiff were to prevail on this request for injunctive relief, the object of this injunction — to remedy Plaintiff's "lifelong ramifications" from the data breach — would well exceed $75,000.00. *Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 346 (1977) ("it is well established that the amount in controversy is measured by the value of the object of the litigation.") Indeed, paying for "appointing a qualified and independent third party assessor to conduct attestation" for ten years of work could alone exceed $75,000.00. (Ex. A, Compl., at 28; *see* Ex. C ¶ 10.) Thus, removal is proper on this basis as well.

## **NOTIFICATIONS**

33. Tandym Group will promptly provide written notice to Plaintiff, through counsel, of the removal, in accordance with 28 U.S.C. § 1446(d).

34. Tandym Group will file a copy of its Notice of Removal with the Clerk of the Circuit Court of Palm Beach County, Florida, in accordance with 28 U.S.C. § 1446(d).

## **NON-WAIVER**

35. If this Court determines that the pleadings and other documents to date lack adequate information from which to ascertain the prerequisites to jurisdiction under CAFA, the removal clock will have not begun to run, and Tandym Group reserves the right to remove this action at the appropriate time.

36. Tandym Group reserves all defenses and objections it may have to this action, without conceding either the Complaint's allegations or that Plaintiff has pleaded claims upon which relief may be granted.

## CONCLUSION

For the foregoing reasons, this action is properly removed to this Court.

**Dated: May 15, 2024**                                 Respectfully submitted,

**DUANE MORRIS LLP**

/s/ *Kevin E. Vance*
   Kevin E. Vance, Esq.
   Florida Bar. No. 0670464
   DUANE MORRIS LLP
   Boca Center Tower II
   5100 Town Center Circle, Suite 400
   Boca Raton, Florida 33486-1008
   Tel: (561) 962-2100
   Email: kevance@duanemorris.com
   Email: pnmendoza@duanemorris.com
   Email: mlchapski@duanemorris.com
   *Attorneys for Defendant*

Justin J. D'Elia (*pro hac vice motion to be filed*)
DUANE MORRIS LLP
1540 Broadway
New York City, New York 10036
Tel: (212) 692-1069
Email: jjdelia@duanemorris.com
*Attorneys for Defendant*

Alex W. Karasik (*pro hac vice motion to be filed*)
Ryan T. Garippo (*pro hac vice motion to be filed*)
Christian Palacios (*pro hac vice motion to be filed*)
DUANE MORRIS LLP
190 South LaSalle Street, Suite 3700
Chicago, Illinois 60603-3433
Tel: (312) 499-6700
Email: awkarasik@duanemorris.com
Email: rgarippo@duanemorris.com
Email: cpalacios@duanemorris.com
*Attorneys for Defendant*

- 13 -

## CERTIFICATE OF SERVICE

I, Kevin Vance, an attorney, certify that on May 15, 2024, I caused a true and correct copy of the foregoing document to be filed through the Court's CM/ECF System and served the below Counsel of Record via electronic mail:

Manuel S. Hiraldo
HIRALDO P.A.
401 E. Las Olas Boulevard
Suite 1400
Fort Lauderdale, Florida 33301
Telephone: (954) 400-4713
Email:  mhiraldo@hiraldolaw.com

Jibrael S. Hindi
THE LAW OFFICES OF JIBRAEL S. HINDI
110 SE 6th Street
Suite 1744
Fort Lauderdale, Florida 33301
Telephone:  (844) 542-7235
Email:  jibrael@jibraellaw.com

/s/ *Kevin E. Vance*
Kevin E. Vance, Esq.